Gregory Scott THOMPSON, Petitioner,

v.

Marty SIRMONS, Respondent.

Case No. CIV–08–444–R.

United States District Court,
W.D. Oklahoma.

Dec. 22, 2008.

Gregory Scott Thompson, McAlester, OK, pro se.

Theodore M. Peeper, Attorney General's Ofc., Oklahoma City, OK, Respondent.

### *ORDER*

DAVID L. RUSSELL, District Judge.

Before the Court are the Report and Recommendation of the United States Magistrate Judge Valerie K. Couch entered November 26, 2008 [Doc. No. 15] and Petitioner's Objection to the Report and Recommendation [Doc. No. 16]. In his Objection, Petitioner makes a blanket objection to the Magistrate Judge's conclusions with respect to all eight of Petitioner's claims for relief. However, he makes no arguments specifically directed to any of his claims for relief except his claim that the evidence was insufficient to support his conviction for felony murder, resulting in a due process violation. Defendant apparently takes issue with the Magistrate Judge's conclusion that the OCCA's determination regarding the sufficiency of the evidence is not contrary to or an unreason-

able application of Supreme Court precedent or an unreasonable determination of the facts in light of the evidence presented. *See* Report and Recommendation at p. 1148–49. Petitioner asserts that under Oklahoma law, the state had to prove that Petitioner aided and abetted in the commission of an attempted robbery; that Petitioner personally intended the death of Jerry McQuin; and that Petitioner aided and abetted Jimmy Gatewood with full knowledge of Gatewood's intent to kill and/or rob Jerry McQuin. Petitioner also contends that the jury instructions did not adequately inform the jury of the prosecution's burden of proving that Petitioner personally intended to take the life of Jerry McQuin. *See* Objection [Doc. No. 16] at pp. 2–3. Finally, Petitioner suggests that his trial and appellate counsel's assistance was ineffective because trial counsel failed to seek adequate instructions and appellate counsel failed to raise instructional error(s) on appeal.

Petitioner did not raise alleged instructional errors and his trial and appellate counsel's alleged failures relating to such instructional errors in his petition for a writ of habeas corpus or before the Magistrate Judge. The court does not consider those claims or theories. Claims, issues or theories raised for the first time in objections to a Magistrate Judge's report and recommendation are deemed waived. *United States v. Garfinkle*, 261 F.3d 1030, 1031 (10th Cir.2001); *Kokinda v. Peterson*, 245 Fed.Appx. 751, 756–57 (10th Cir.2007); *Sparks v. Foster*, 241 Fed. Appx. 467, 473, 473–74 (10th Cir.2007).

In order to convict Petitioner of first degree felony murder with attempted robbery with a dangerous weapon as the underlying felony, the state had to prove beyond a reasonable doubt that Defendant *either* wrongfully attempted to take and carry away personal property of another from the person of another, by force or

fear, through the use of a dangerous weapon, *see* Oklahoma Uniform Jury Instructions Criminal, Second Edition (OUJI–CR) 4–145; *see also* Okla. Stat. tit. 21, §§ 791, 801, *or* that Defendant aided, prompted or encouraged attempted robbery with a dangerous weapon by act or counsel or both and did so knowingly with criminal intent to commit armed robbery or attempted armed robbery with a dangerous weapon, *see* OUJI–CR 2–5 & 2–6; *see also* Okla. Stat. tit. 21, § 171, 172, *and* that the death of a human occurred as a result of an act or event which happened in the Defendant's attempt to commit robbery with a dangerous weapon or his aiding or abetting the commission of such offense. OUJI–CR 4–64; *see also* Okla. Stat. tit. 21, § 701.7(B). For the reasons explained by both the Oklahoma Court of criminal Appeals, *see* Opinion, *Thompson v. State*, Case No. F–2006–68 (Okla.Crim.App. May 22, 2007)(unpublished)(Exhibit "5" to 2007 Response [Doc. No. 11] ) and the Magistrate Judge, *see* Report and Recommendation at pp. 1148–49, 1149–50, there was more than sufficient evidence for the jury to find that Petitioner was guilty of First Degree Felony Murder with attempted robbery with a dangerous weapon or aiding and abetting such attempt as the underlying offense. Viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the essential elements of First Degree Felony Murder beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560, 573 (1979). While the prosecution had the burden of proving that Petitioner intended to commit robbery or attempted robbery with a dangerous weapon or to aid or abet another in the commission or attempted commission of that offense, contrary to Petitioner's argument, the prosecution did not have to prove that Petitioner intended to cause the death of a person. *See* Okla. Stat. tit. 21,

§ 701.7(B)("A person ... commits murder in the first degree, when that person or any other person takes the life of a human being during, or if the death of a human being results from, the commission or attempted commission of ... robbery with a dangerous weapon ...."); *see Dickens v. State,* 106 P.3d 599, 600–01 (Okla.Crim.App.2005)(appellant was properly convicted of First Degree Felony Murder when appellant's accomplice in an armed robbery was shot by a police officer as appellant and accomplice were fleeing the scene of the robbery); *Diaz v. State,* 728 P.2d 503, 509 (Okla.Crim.App.1986)(nexus between the death of a person and the underlying felony is necessary). *See also Brown v. Sirmons,* 515 F.3d 1072, 1088 (10th Cir.), *cert. denied,* —— U.S. ——, 129 S.Ct. 403, 172 L.Ed.2d 294 (2008)(under Oklahoma's felony murder statute, Okla. Stat. tit. 21, § 701.7(B), "[t]he defendant's state of mind with respect to death is irrelevant;" felony murder with robbery with a dangerous weapon as the underlying crime is a general intent crime)(quoting *Franks v. Alford,* 820 F.2d 345, 347 (10th Cir.1987) and citing *Pickens v. State,* 19 P.3d 866, 879 (Okla.Crim.App.2001)).

Accordingly, the OCCA's determination regarding the sufficiency of the evidence against Petitioner is not contrary to or an unreasonable application of Supreme Court precedent, nor is it an unreasonable determination of the facts in light of the evidence presented. Although the OCCA did not cite *Jackson v. Virginia, supra,* it properly applied the identical standard. *See* OCCA Opinion (Exhibit "5" to Response [Doc. No. 11] at p. 12.)

In accordance with the foregoing, the Report and Recommendation [Doc. No. 15] is ADOPTED in its entirety and the petition of Gregory Scott Thompson for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is DENIED.

## REPORT AND RECOMMENDATION

VALERIE K. COUCH, United States Magistrate Judge.

Petitioner, Gregory Scott Thompson, appearing *pro se,* has filed a petition for habeas corpus relief pursuant to 28 U.S.C. § 2254 challenging his state court conviction on various federal constitutional grounds. It is recommended that his petition be denied.

### I. *Relevant Case History*

Petitioner was convicted of First Degree Felony Murder in the District Court of Oklahoma County, State of Oklahoma, Case No. CF–2003–6542. He was sentenced to life imprisonment without the possibility of parole.

### II. *Petitioner's Claims for Federal Habeas Relief*

Petitioner brings the following grounds for federal habeas corpus relief: (1) Petitioner was denied the right to present a defense in violation of his Sixth and Fourteenth Amendment rights; (2) the trial court erred in limiting Petitioner's ability to impeach two of the State's witnesses in violation of his Sixth and Fourteenth Amendment rights; (3) Petitioner's Fifth Amendment right to counsel was violated because the trial court admitted custodial statements taken in violation of *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); (4) Petitioner's waiver of counsel was not knowing and voluntary in violation of his Sixth Amendment rights; (5) the evidence was insufficient to support the conviction of first degree felony murder in violation of Petitioner's due process rights; (6) multiple errors during the sentencing phase of Petitioner's trial violated his due process rights; (7) Petitioner's trial counsel rendered ineffective assistance in violation of his Sixth Amendment rights;

and (8) cumulative error denied Petitioner of a fair and impartial trial.

Petitioner raised each of these grounds for relief on direct appeal of his conviction to the Oklahoma Court of Criminal Appeals (OCCA). The OCCA affirmed the conviction by opinion filed May 22, 2007. *See* Response to Petition for Writ of Habeas Corpus (Response) [Doc. # 11], Exhibit 5, OCCA Opinion. The OCCA did, however, grant relief on Petitioner's claims related to sentencing error and modified his sentence from life imprisonment without the possibility of parole to life imprisonment.

### III. *Standard of Review*

■ The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) standards of review apply to Petitioner's grounds for relief as each ground raised by Petitioner was adjudicated on the merits by the OCCA. *See Turrentine v. Mullin,* 390 F.3d 1181, 1188 (10th Cir.2004). Under AEDPA, this Court may grant Petitioner habeas relief only if the state court adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Under this standard, judicial review is directed to the result of the state appellate court's decision, not its reasoning. *See Gipson v. Jordan,* 376 F.3d 1193, 1197 (10th Cir.2004) ("[W]e defer to the [state court's] decision unless we conclude that its result—not its rationale—is 'legally or factually unreasonable.' ").

■ A state court decision is "contrary to" clearly established federal law for purposes of § 2254 if "the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases" or if "the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and

nevertheless arrives at a result different from" the result reached by the Supreme Court. *Williams v. Taylor,* 529 U.S. 362, 405–406, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). It is not enough that the state court decided an issue contrary to a lower federal court's conception of how the rule should be applied; the state court decision must be "diametrically different," "opposite in character or nature," or "mutually opposed" to the Supreme Court decision itself. *Id.* at 406, 120 S.Ct. 1495.

■ A state court decision involves an "unreasonable application" of federal law if "the state court identifies the correct governing legal principle from [Supreme Court] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413, 120 S.Ct. 1495. "AEDPA's conception of objective unreasonableness lies 'somewhere between *clearly* erroneous and unreasonable to all reasonable jurists.' " *House v. Hatch,* 527 F.3d 1010, 1019 (10th Cir.2008) (*quoting Maynard v. Boone,* 468 F.3d 665, 670 (10th Cir.2006)). "Thus, 'only the most serious misapplications of Supreme Court precedent will be a basis for relief under § 2254.' " *Id.* (*quoting Maynard,* 468 F.3d at 671).

### IV. *Facts of the Case*

The facts relevant to disposition of Petitioner's claims are taken from the OCCA's opinion affirming Petitioner's conviction.

On the evening of November 18, 2003, Randy Davis and Clifford Hamilton went to the home of Laquita Stevenson. Davis and Stevenson had dated on and off in the past but were not presently involved. Rather, Stevenson was currently living with Jerry McQuin, a man she had met four days earlier. When Davis arrived, McQuin was not there. Stevenson tried to persuade Davis to leave but he was drunk and would not go. After Davis had been there for about twenty minutes, McQuin arrived.

McQuin went immediately to a bedroom in the back of the house. McQuin and Davis were each upset about the other's presence at the house but were cordial to one another.

After McQuin arrived, Davis began playing with his cell phone and went out to the front porch where he called someone who he requested come to Stevenson's house. When he came back into the house he was accompanied by Appellant and Jimmy Gatewood. Stevenson asked all four men to leave but they refused. Appellant asked Davis why he had called him over. When Stevenson attempted to leave the room Appellant stepped in front of her and asked where she was going. She inferred that she was going to get a gun. At this point he pulled out a gun which he held down to his side. She told him that he did not scare her because she didn't believe that he would shoot her in front of her cousin, Ashley Tubbs, and her baby who were also present in the house. Appellant put his gun away.

Around this time, Davis pulled Stevenson away from Appellant and told her to tell McQuin to move his car because he had parked it against the bumper of Davis' SUV. McQuin had parked his car behind Davis' SUV in the driveway. Appellant then asked if that was McQuin's car and he went outside with Gatewood and Davis. While they were outside Stevenson did not tell McQuin to move his car but instead attempted to call the police. While she was doing this Davis came back inside the house and took the phone from her and they went back into the living room. Appellant came into the living room and asked Davis, "So what did you call me over here for? What are we going to

do? We fighting, fucking or something?" Davis told him to "Chill out." Davis also said, "There's fixin' to be a killing." Davis, Appellant and Gatewood talked some more about McQuin's car. Then Davis told Stevenson again to tell McQuin to move his car. Stevenson was under the impression that Davis was tired of being there and was ready to leave. She went toward the back of the house to tell McQuin to move his car when Davis pushed past her and went into the bedroom occupied by McQuin to get him. When Davis and McQuin returned to the living room, Appellant and Gatewood had pulled bandanas over their faces. Appellant and Gatewood pulled guns on McQuin and asked him for his car keys. When McQuin responded that his keys were outside the men forced him to go outside.

Inside, Stevenson went to call the police. She could hear the men outside and believed that they were still talking about the car keys. She heard McQuin tell them that the keys were in the house and he yelled, "Baby, give them the keys." Soon thereafter, she heard gunshots and the sound of burning rubber. Outside, McQuin had been shot and his car, a 1981 Caprice, had been pushed out of the driveway, across the street and into a neighbor's yard by Davis' SUV. McQuin died soon thereafter from multiple gunshot wounds.

*See* Response, Exhibit 5, OCCA Opinion. Additional facts may be addressed as relevant to the grounds raised in the Petition.

## V. *Analysis*

### A. *Ground One—Right to Present a Defense*

■ At the time of McQuin's murder,[1] police found in McQuin's pocket a baggie

---

1. It appears the victim's name is sometimes reported in the record as McQuin and other times as McQuinn. For uniformity, this

Court uses the same spelling utilized by the OCCA in its opinion affirming Petitioner's

containing four rocks of crack cocaine and a large amount of cash. The State filed a pre-trial motion in limine to exclude this evidence, and the trial court granted the State's motion. *See* Relevant State Court Record (Record) [Doc. # 14], Transcript of Excerpt of Trial Proceedings had on December 12, 2005 (E. Tr.) at 4–8, 16–17. In his first ground for habeas relief, Petitioner claims the trial court's refusal to allow the introduction of this evidence at trial violated his constitutional right to present a defense. According to Petitioner, he was prevented from introducing third-party perpetrator evidence and he also was prevented from challenging the State's theory of the case, *i.e.*, that McQuin was shot in the course of an attempted robbery of his car. Petitioner contends had the evidence been admitted, he could have established that McQuin was shot as the result of a drug deal that had gone awry.

■■■ The Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense. *Holmes v. South Carolina*, 547 U.S. 319, 324, 126 S.Ct. 1727, 164 L.Ed.2d 503 (2006) (observing that the right to present a defense may be rooted directly in the Due Process Clause of the Fourteenth Amendment, or in the Compulsory Process or Confrontation clauses of the Sixth Amendment). That right, however, is not absolute, and broad latitude is granted the States to establish rules excluding evidence from criminal trials. *Id.* Nonethe-

less, if a State's rules are arbitrary or disproportionate to the purpose they are designed to serve and infringe upon "a weighty interest of the accused," the rules may violate a criminal defendant's right to present a defense.

In *Holmes*, the Supreme Court specifically addressed "rules regulating the admission of evidence proffered by criminal defendants to show that someone else committed the crime with which they are charged." *Holmes*, 547 U.S. at 327, 126 S.Ct. 1727. The Court noted that such evidence may be introduced by the accused when "it is inconsistent with, and raises a reasonable doubt of, his own guilt; but frequently matters offered in evidence for this purpose are so remote and lack such connection with the crime that they are excluded." *Id.* at 327, 126 S.Ct. 1727 (citations and quotations omitted). In *Holmes*, the Supreme Court examined the evidentiary standards of the State of South Carolina to determine whether those standards comported with constitutional requirements.[2]

■■■ Under Oklahoma law, the admissibility of third party perpetrator evidence is governed by the following standards:

"There must be evidence of acts or circumstances that tend clearly to point to another, rather than to the defendant, as the guilty party," … "there must be such proof of connection with it, such a train of facts or circumstances, as tend

conviction and, therefore, reference to the victim's last name will be spelled McQuin.

**2.** In *Holmes*, the Supreme Court found that the rule applied by the South Carolina Supreme Court was "arbitrary" and did not rationally serve the proper ends of third-party perpetrator evidentiary rules because South Carolina's rule permitted exclusion of the third-party evidence based solely on the strength of the prosecution's evidence against the defendant. Criticizing the state rule, the Supreme Court stated: "If the prosecution's

case is strong enough, the evidence of third-party guilt is excluded even if that evidence, if viewed independently, would have great probative value and even if it would not pose an undue risk of harassment, prejudice or confusion of the issues." *Id.* at 329, 126 S.Ct. 1727. As discussed *infra*, however, the Oklahoma rule applied in this case does not suffer from the same defect, as the strength of the prosecution's evidence is not a factor in determining the admissibility of evidence of a third-party perpetrator.

clearly to point out some one besides the prisoner as the guilty party. Remote acts, disconnected, and outside of the crime itself, cannot be separately proved for such a purpose" ..., and "there must be evidence of acts or circumstances that tend clearly to point to another, rather than the accused." Accordingly, proof of an overt act in the commission of the crime is required, but it is as a threshold showing, and not as the sole determining factor. It is only one of the factors to consider in determining if the evidence sufficiently connects the third party to the crime.

As our test for determining the admissibility of third party perpetrator evidence is based upon more than the single finding of an overt act in the commission of the crime, the standard is not too strict and is consistent with constitutional principles. It does not prevent the defendant from presenting a defense or presenting evidence that another person may have committed the crime as long as there is some quantum of evidence, which is more than mere suspicion and innuendo, that connects the third party to the commission of the crime. It does not directly control the scope of defense counsel's argument to the jury and counsel is allowed to argue any inference that can be fairly drawn from the evidence.

*Stouffer v. State,* 147 P.3d 245, 262–262 (Okla.Crim.App.2006) (*quoting Gore v. State,* 119 P.3d 1268, 1276 (Okla.Crim.App. 2005)).

Rejecting Petitioner's claim on direct appeal, the OCCA relied upon the United States Supreme Court's decision in *Holmes* to find that the trial court properly excluded evidence of a third-party perpetrator. The OCCA discussed and followed *Holmes,* quoting the following passage from the U.S. Supreme Court's opinion:

While the Constitution thus prohibits the exclusion of defense evidence under rules that serve no legislative purpose or that are disproportionate to the ends that they are asserted to promote, well-established rules of evidence permit trial judges to exclude evidence if its probative value is outweighed by certain other factors such as unfair prejudice, confusion of the issues, or potential to mislead the jury.

*See* Response, Exhibit 5, OCCA Opinion at 5 (*citing* and *quoting Holmes,* 547 U.S. at 326, 126 S.Ct. at 1732). The OCCA noted the further explanation in *Holmes,* that "the Constitution permits judges 'to exclude evidence that is repetitive ..., only marginally relevant' or poses an undue risk of 'harassment, prejudice, [or] confusion of the issues.'" *Id.* The OCCA relied upon *Stouffer, supra,* and other Oklahoma case authority to articulate the applicable Oklahoma rule: "... in order to be admissible, evidence offered to show that some other person committed the crime must, by some quantum of evidence, which is more than mere suspicion or innuendo, *connect another person to the commission of the crime.*" *Id.* In applying these precedents, the OCCA concluded that "evidence that [McQuin] had drugs and money in his pants pocket at the time he was killed provided, at best, nothing more than suspicion and innuendo that he may have been killed by a third person as a result of a drug deal gone bad." *Id.*

Petitioner fails to demonstrate that the OCCA's decision is contrary to or an unreasonable application of *Holmes* or any other established Supreme Court precedent. Petitioner's proffered evidence does not identify any individual as the alternative perpetrator, and there is no evidence of any overt act by a third-party perpetrator. The evidence that McQuin had drugs and cash in his pants pocket does not constitute evidence tending to show that

the crime was committed by another person nor does it raise a reasonable doubt of Petitioner's guilt. The evidence does not sufficiently connect another person to the crime. As the trial court observed in addressing Petitioner's objection to the State's motion in limine, defense counsel could "still show there was somebody else there that wanted to rob [McQuin], whether it was a car or drugs or whatever." E. Tr. at 7. But, evidence about the drugs and money in McQuin's pocket would show the victim's bad character and would be inadmissible unless his character became an issue. *Id.* at 7–8.

As other evidence in support of his argument, Petitioner relies on the fact that McQuin had made a phone call and given someone the address to Ms. Stevenson's house just prior to the shooting and that at trial Ashley Tubbs testified that just prior to the shooting McQuin had asked Davis if he had "any greens." Tr. Vol. II at 85–86. There was, however, no evidence proffered that anyone arrived at Ms. Stevenson's house in response to McQuin's phone call. Moreover, as the OCCA determined, Petitioner's assertion that "any greens" is a reference to drug-dealing is unsubstantiated by the record (OCCA Opinion at 19), and to suggest so is speculative. This additional speculation does not raise the quantum of Petitioner's proffered evidence to any level above suspicion and innuendo. *Cp. United States v. Jordan*, 485 F.3d 1214, 1221 (10th Cir.2007) (finding that the proffered third-party perpetrator evidence, neither alone nor in combination, suggested that the trial court abused its discretion in excluding the evidence).

Because the proffered evidence lacked probative value for showing the involvement of a third-party perpetrator and was outweighed by the dangers of confusion of the issues and misleading the jury, the trial court, as determined by the OCCA, properly excluded the evidence, and Petitioner was not deprived of a meaningful opportunity to present a defense. Petitioner has failed to demonstrate that the OCCA's determination of this issue is contrary to *Holmes* or any other relevant United States Supreme Court precedent governing the right to present a defense. Nor has Petitioner demonstrated that the OCCA unreasonably applied Supreme Court precedent to the facts of his case. Accordingly, Ground One of the Petition should be denied.

**B. *Ground Two—Exclusion of Impeachment Evidence***

Petitioner claims the trial court erred in refusing to allow him to impeach two of the State's witnesses, Laquita Stevenson and Jimmy Gatewood. Petitioner claims the exclusion of the impeachment evidence violated his constitutional right to cross-examine witnesses against him.

▮▮▮▮▮ "[A] criminal defendant states a violation of the Confrontation Clause by showing that he was prohibited from engaging in otherwise appropriate cross-examination designed to show a proto-typical form of bias on the part of the witness, and thereby to expose to the jury the facts from which jurors . . . could reasonably draw inferences related to the reliability of the witness." *Delaware v. Van Arsdall*, 475 U.S. 673, 680, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986) (internal quotations and citation omitted). Nonetheless, "[t]he Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Id.* at 679, 106 S.Ct. 1431 (emphasis in original). Trial judges retain wide latitude under the Confrontation Clause to reasonably limit cross-examination to ensure relevancy and efficiency and to prevent confusion, harassment, repetitiveness and misleading the jury. *Id.*

### 1. *Laquita Stevenson*

█ Petitioner first claims the trial court improperly limited his ability to impeach Laquita Stevenson. The record shows that Ms. Stevenson, a material witness for the State, had initially refused to testify and was arrested as a result. After being held in custody for a few days, Ms. Stevenson then cooperated with the State and agreed to testify.

During the trial, defense counsel informed the trial court of their intent to question Ms. Stevenson about her previous refusal to testify. The trial court never ruled that defense counsel was prohibited from pursuing this line of inquiry with Ms. Stevenson. Instead, the trial court cautioned defense counsel that such a line of inquiry would open the door to the State questioning Ms. Stevenson about her reasons for refusing to testify. Tr. Vol. II at 7–16. As reflected in statements made by the trial court, those reasons included the fact that Petitioner and his gang-member friends had made numerous threats against Ms. Stevenson and her child, including threats to kill her. Tr. Vol. II at 9–11, 14. After discussing with defense counsel the potential ramifications of opening the door to this kind of evidence, the trial court stated: "The Court's made you aware of what's going to happen. It's your choice." Tr. Vol. II at 13.

The OCCA rejected this claim on direct appeal making the following findings:

> The record indicates that Stevenson did not want to testify at trial and was arrested as a material witness. Defense counsel stated that he intended to cross-examine Stevenson about why her demeanor had changed and why she was suddenly willing to testify. The trial court advised defense counsel that if he pursued this line of cross-examination, it would open the door to questions on redirect through which the prosecution could elicit from Stevenson that she and her family had been threatened by defendant and his friends. We find that the trial court's ruling was not, as Appellant asserts, a limitation on his right to cross-examination. The trial court did not prohibit defense counsel from eliciting important and relevant impeachment evidence, but rather, simply advised defense counsel that this would open the door to less favorable evidence that could be elicited from this same witness by the prosecution.

*See* OCCA Opinion at 7. The OCCA's findings accurately reflect that the trial court never prohibited defense counsel from pursuing this line of inquiry. Accordingly, Petitioner fails to establish that he was denied the opportunity for cross-examination. Moreover, Petitioner does not claim that the evidence the trial court warned defense counsel about, i.e., the potential evidence of Petitioner's threats to Ms. Stevenson and her family had defense counsel pursued this line of inquiry, was in any way inadmissible evidence. Under these circumstances, Petitioner has not demonstrated that the trial court's admonition violated his Sixth Amendment confrontation rights. The OCCA's determination of this issue is not contrary to or an unreasonable application of clearly established federal law.

### 2. *Jimmy Gatewood*

█ Petitioner also claims his confrontation rights were violated when he was not allowed to impeach the State's witness, Jimmy Gatewood, with evidence of his prior juvenile adjudication for concealing stolen property. As set forth above, the trial testimony showed that Jimmy Gatewood arrived with Petitioner at Ms. Stevenson's house on the night of the murder. Gatewood and Petitioner both escorted McQuin outside Ms. Stevenson's house with guns drawn. Gatewood was present at the time McQuin was shot but testified that he did

not directly witness the shooting because he was walking towards his car and had his back to Petitioner and McQuin. Tr. Vol. II at 166, 187, 188. Nonetheless, Gatewood testified that when he heard shots fired, he thought Petitioner shot McQuin. Tr. Vol. II at 167. He also testified that he saw Petitioner with a gun in Stevenson's house that night. *Id.*

Gatewood was charged with first degree murder. However, he entered into a plea agreement in exchange for his testimony and the charge was amended to accessory to murder. Gatewood received a ten-year sentence as a result of the plea. Tr. Vol. II at 161–162.

On cross-examination, Gatewood testified that he had two prior felony convictions. Tr. Vol. II at 169. Defense counsel then attempted to ask Gatewood about a prior juvenile adjudication, wanting to know whether that conviction was for concealing stolen property. Tr. Vol. II at 169–170.[3] The State objected to defense counsel making further inquiry about Petitioner's juvenile conviction, and the trial court sustained the objection. Tr. Vol. II at 170–171.

Defense counsel challenged Gatewood's credibility in a number of ways including the fact that despite identical charges filed against him for McQuin's murder, his plea agreement resulted in a conviction on a lesser offense and a relatively minor ten-year sentence. Defense counsel also rigorously challenged Gatewood's veracity through questions pertaining to letters Gatewood wrote to Petitioner after the murder that demonstrated Gatewood's motivation for entering a plea agreement. In addition, defense counsel demonstrated

that Gatewood originally lied to police about even being present at the scene of the crime. *See* Tr. Vol. II at 185–205.

Addressing this claim on direct appeal, the OCCA noted that evidence of juvenile adjudications is generally not admissible under Oklahoma law. *See* OCCA Opinion at 8, *citing* Okla. Stat. tit. 12, § 2609(D). An exception to this rule exists, however, if admission of the juvenile adjudication is used to attack the credibility of the witness provided that "the court is satisfied that admission in evidence is necessary for a fair determination of the issue of guilt or innocence." *Id.* The OCCA determined that the evidence of the prior juvenile adjudication was not necessary for a fair determination of the issue of guilt or innocence. *Id.* In support of this determination, the OCCA stated:

> Given the fact that the jury was well aware of Gatewood's involvement in the present case as well as the fact that he entered a guilty plea to a significantly lesser crime with the agreement that he would testify against Appellant, it is clear that his juvenile adjudication for concealing stolen property was not the only means by which defense counsel could call into question the veracity of this witness.

*See* OCCA Opinion at 8. The OCCA then concluded that Petitioner was not denied his constitutional right to confront witnesses against him. *Id.*

In *Davis v. Alaska,* 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974), a case cited by Petitioner in support of this ground for relief, the United States Supreme Court held that a criminal defen-

---

**3.** There is no clear indication in the record as to the nature of the juvenile adjudication. It appears defense counsel was trying to find out that information from Gatewood. Tr. Vol. II at 170 ("On the NCIS it shows something, they didn't know what the nature of the con-

viction was, it says unknown, is what it's saying, that's why I was inquiring. I don't know if he knows what it was."). There is no other evidence submitted by Petitioner that would confirm the nature of the juvenile adjudication.

dant's confrontation rights are paramount to state evidentiary rules designed to protect juvenile offenders. *Id.* at 319, 94 S.Ct. 1105 ("The State's policy interest in protecting the confidentiality of a juvenile offender's record cannot require yielding of so vital a constitutional right as the effective cross-examination for bias of an adverse witness."). The facts of *Davis,* however, are distinguishable from the present action. In *Davis,* the defense was prevented from effectively impeaching the State's witness, Richard Green, because without the admission of evidence pertaining to Green's prior juvenile conviction, it was not possible for defense counsel to establish the reasons why Green may have been biased. Green was on probation by order of a juvenile court after having been adjudicated a delinquent for burglarizing two cabins. Green was testifying against Davis, the criminal defendant, as an eyewitness who observed Davis trying to pry open a safe stolen from a local bar. Without the admission of evidence pertaining to Green's prior juvenile adjudication, defense counsel could not establish Green's possible motivation for testifying falsely, including the fact that the police might have suspected that Green himself was involved in the burglary. And, no other evidence permitted defense counsel to challenge Green's credibility. As the Supreme Court observed: "[w]hile counsel was permitted to ask Green whether he was biased, counsel was unable to make a record from which to argue why Green might have been biased or otherwise lacked that degree of impartiality expected of a witness at trial." *Id.* at 318, 94 S.Ct. 1105. Noting that "[s]erious damage to the strength of the State's case would have been a real possibility had petitioner been allowed to pursue this line of inquiry" the Court concluded that "[i]n this setting ... the right of confrontation is paramount to the State's policy of protecting a juvenile offender." *Id.* at 319, 94 S.Ct. 1105.

In contrast, in the present case, defense counsel had multiple avenues available as a means to challenge Gatewood's credibility. The jury knew Gatewood was present at the time of the murder, had been charged initially with murder, accepted a plea on a conviction for a lesser offense and wrote letters to Petitioner encouraging him to work out a deal with the State. In addition, the jury knew that Gatewood had two prior felony convictions. Given this store of impeachment evidence, the limitation on Petitioner's ability to show the jury that Gatewood had received a juvenile adjudication for concealing stolen property did not deprive Petitioner of his confrontation rights.

In sum, the OCCA's adjudication of Petitioner's confrontation claims raised in Ground Two of the Petition is not contrary to or an unreasonable application of clearly established federal law. Ground Two of the Petition should be denied.

### C. *Ground Three—Admission of Custodial Statements*

■ Petitioner claims in Ground Three of the Petition that his Fifth Amendment right to counsel was violated as a result of the trial court's admission of custodial statements allegedly taken in violation of *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). *See Toles v. Gibson,* 269 F.3d 1167, 1180 (10th Cir. 2001) ("The Fifth Amendment right to counsel must be asserted by the accused and it covers interrogation concerning any offense, past or present, charged or uncharged.").

On December 4, 2003, Petitioner was arrested pursuant to an arrest warrant and interviewed by Steve Carson and Gary Damron, homicide investigators working for the Oklahoma City Police Department. At Petitioner's trial, Detective Carson tes-

tified about statements Petitioner made during this interview.[4]

The trial court conducted a pre-trial hearing pursuant to *Jackson v. Denno,* 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964), to determine whether Petitioner voluntarily made the statements to Detectives Carson and Damron. *See* Motion Transcript, December 9, 2005 (Mot. Tr.) at 28–59; *see also* E. Tr. at 3–4. Detective Carson testified that he read *Miranda* rights to Petitioner and Petitioner told him he understood those rights. Mot. Tr. at 30. Detective Carson testified that Petitioner was told if he wanted an attorney, he would not be able to make a statement at that time. Detective Carson testified Petitioner responded to that information by saying: "To hell with the attorney." Mot. Tr. at 36.

Petitioner also testified at the pre-trial hearing. He testified that during lunch, an hour or two before the interview, he had consumed a half pint of gin. Mot. Tr. at 48–49. He had returned to work at the time he was arrested and was not too drunk to climb a 15-foot ladder. Mot. Tr. at 53. Petitioner stated that he was a little drunk during the interview. Mot. Tr. at 42. However, Petitioner testified that he was not too drunk to answer the questions properly. He described himself as "carefree" and "talking too much when I really wouldn't." Mot. Tr. at 51. He also stated he "wasn't really drunk" or "stumbling drunk" but he was "fancy free drunk." Mot. Tr. at 53.

Petitioner testified that he understood his *Miranda* rights when they were read to him. Mot. Tr. at 48, 56. He agreed with Detective Carson that he said "to hell with an attorney" and testified that he refused an attorney and then spoke to the officers. Mot. Tr. at 57. Petitioner did not

dispute that after he was advised he had a right to an attorney, he proceeded to talk with the detectives. Mot. Tr. at 58. Following this evidence, the trial court determined the statements were admissible. Mot. Tr. at 59.

At trial Detective Carson further testified as to the voluntariness of Petitioner's statement. Tr. Vol. II at 277. Detective Carson testified Petitioner gave no indication he was under the influence of alcohol and his demeanor did not reflect so either. Detective Carson stated there was no doubt in his mind that the statements Petitioner gave were voluntary. Tr. Vol. II at 277. Detective Carson then testified that Petitioner denied having been present at Ms. Stevenson's house on the night of the murder and further, that Petitioner claimed to be with his girlfriend, Andrea Sims. Tr. Vol. II at 278–279.

Rejecting this claim on direct appeal, the OCCA made the following findings:

> The videotape of the interview at issue reflects that after detectives advised Appellant that he could have a lawyer present with him during the interview, Appellant asked if he could have a lawyer "right now." Detectives responded that he could not—he would have to wait until a court appointed one or he could hire one. Appellant was concerned that the wait would "stretch" him out. He responded, "to hell with an attorney" and he proceeded to talk to the detectives. This exchange does not, as Appellant asserts, reflect an unequivocal assertion of the right to counsel. It reflects an inquiry about the availability of counsel followed by a clear indication by the Appellant that he desired to proceed with the interview without counsel present. Given this exchange along

---

4. The interview was videotaped, *see* Record, Videotape of Interview with Gregory Thomp-

son, December 4, 2003. However, the videotape was not admitted into evidence.

with the whole of the testimony at the *Jackson v. Denno* hearing, we find that the Appellant did not sufficiently invoke his right to counsel and the trial court did not err in finding that his custodial statements were made knowingly and voluntarily. Accordingly, the trial court did not err in denying Appellant's Motion to Suppress.

*See* OCCA Opinion at 9–10.

"[I]f a suspect makes a reference to an attorney that is ambiguous or equivocal in that a reasonable officer in light of the circumstances would have understood only that the suspect *might* be invoking the right to counsel, [Supreme Court] precedents do not require the cessation of questioning." *Davis v. United States*, 512 U.S. 452, 459, 114 S.Ct. 2350, 129 L.Ed.2d 362 (1994). This Court has similarly reviewed the videotape of the police interview with Petitioner. The OCCA's characterization that Petitioner did not make an unequivocal assertion of the right to counsel is accurate.

In sum, Petitioner has not established that he was too intoxicated to understand the *Miranda* rights, as read to him by Detective Carson. Similarly, Petitioner has not established that the officers should have ceased questioning him as Petitioner did not unambiguously request counsel. To the contrary, Petitioner's statement "to hell with an attorney" accompanied by his conduct in continuing discussions with the detectives establishes he knowingly and voluntarily waived his right to counsel. The OCCA's determination of this issue is not contrary to or an unreasonable application of clearly established federal law nor is it an unreasonable determination of the facts in light of the evidence presented. Ground Three of the Petition should be denied.

**D.** *Ground Four—Knowing and Voluntary Waiver of Sixth Amendment Right to Counsel*

At the time of Petitioner's arrest, the State had filed an Information naming Randall Davis and three unknown black males as defendants. Petitioner claims, therefore, that his Sixth Amendment right to counsel attached at the time of the police interview. Petitioner claims he did not knowingly and voluntarily waive his Sixth Amendment right to counsel because he was not advised at the time of his arrest that murder charges had been filed and that he was one of the unnamed defendants. An Amended Information naming Petitioner was filed four days following the police interview. *See* OCCA Opinion at 1, footnote 1; *see also id.* at 11–12.

The OCCA found Petitioner's Sixth Amendment right to counsel had not attached at the time of the custodial interrogation:

> While we agree with Appellant that the Sixth Amendment right to counsel attaches with the filing of an Information formally charging an individual with the commission of a crime, we do not agree that the failure to advise Appellant that an Information had been filed rendered his waiver of counsel invalid. This is true, in part, because the Information that had been filed at the time of the custodial interrogation did not charge Appellant but rather charged Randall Davis and three unknown black males. Appellant was not charged by name until the Amended Information was filed on December 8, 2003. This was four days after detectives had interrogated him.

*See* OCCA Opinion at 11–12.

The Sixth Amendment right to counsel generally attaches "at or after the initiation of adversary judicial criminal proceedings—whether by way of formal

charge, preliminary hearing, indictment, information, or arraignment." *McNeil v. Wisconsin,* 501 U.S. 171, 175, 111 S.Ct. 2204, 115 L.Ed.2d 158 (1991) (quotations omitted). "[T]he right to counsel exists to protect the accused during trial-type confrontations with the prosecutor...." *United States v. Gouveia,* 467 U.S. 180, 190, 104 S.Ct. 2292, 81 L.Ed.2d 146 (1984). "[A] criminal defendant's initial appearance before a judicial officer, where he learns the charge against him and his liberty is subject to restriction, marks the start of adversary judicial proceedings that trigger attachment of the Sixth Amendment right to counsel." *Rothgery v. Gillespie County, Texas,* —— U.S. ——, 128 S.Ct. 2578, 2592, 171 L.Ed.2d 366 (2008).

Petitioner does not cite to any clearly established Supreme Court precedent to support his claim that the Sixth Amendment right to counsel attached at the time of his arrest and custodial interrogation based on the Information charging Randall Davis and three unknown black males. *Compare United States v. Gouveia,* 467 U.S. 180, 190, 104 S.Ct. 2292, 81 L.Ed.2d 146 (1984) ("[W]e have never held that the right to counsel attaches at the time of arrest."); *United States v. Alvarado,* 440 F.3d 191, 199 (4th Cir.2006) ("By its own terms, the Sixth Amendment applies to 'criminal *prosecutions,*' as opposed to criminal *investigations.*") (emphasis in original) (*citing* U.S. Const. amend VI). On this basis alone, his claim for federal habeas corpus relief should be denied. *See House v. Hatch, supra,* 527 F.3d at 1017 ("[W]ithout clearly established federal law, a federal habeas court need not assess whether a state court's decision was 'contrary to' or involved an 'unreasonable application' of such law.").

▆▆▆ Assuming alternatively, as did the OCCA, that the Information against Randall Davis and three unknown black males constituted a formal charge against

Petitioner, and, therefore, that Petitioner's Sixth Amendment rights attached at the time of the detectives' interview of Petitioner, he has failed to establish his waiver of counsel was not knowing and voluntary. At the commencement of the interview, the detectives advised Petitioner that they were "working a killing," that Petitioner had been arrested concerning a murder charge following a judge's finding of probable cause and that police had information that Petitioner was at the scene and/or involved in the commission of the murder. *See* Record, Video of Interview with Gregory Thompson, December 4, 2003. As discussed in relation to Petitioner's third ground for relief, Petitioner was then fully advised of his *Miranda* rights, including his right to counsel and Petitioner knowingly and voluntarily waived that right. As the OCCA noted in rejecting this claim on direct appeal, under Supreme Court precedent, "an accused who is admonished with the warnings prescribed by this Court in *Miranda* has been sufficiently apprised of the nature of his Sixth Amendment rights, and of the consequences of abandoning those rights, so that his waiver on this bases will be considered a knowing and intelligent one." *See* OCCA Opinion at 11 (*quoting Patterson v. Illinois,* 487 U.S. 285, 296, 108 S.Ct. 2389, 101 L.Ed.2d 261 (1988)). Petitioner has failed to establish a violation of his Sixth Amendment rights that would entitle him to federal habeas corpus relief. Ground Four of the Petition, therefore, should be denied.

### E. *Ground Five—Sufficiency of the Evidence*

Petitioner claims the State failed to prove Petitioner committed felony murder beyond a reasonable doubt and, therefore, that his conviction violates the Due Process Clause of the United States Constitution. Specifically, Petitioner claims the evidence was insufficient to establish Peti-

tioner fired the bullets that killed Jerry McQuin and the accomplice testimony of Jimmy Gatewood was not sufficiently corroborated as required under Oklahoma law. In addition, Petitioner claims the evidence was insufficient to establish the elements of the underlying felony, attempted robbery.

■■■■ On federal habeas review of the sufficiency of the evidence the proper inquiry is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Hamilton v. Mullin,* 436 F.3d 1181, 1194 (10th Cir.2006) *(citing Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)). This standard respects the jury's province to weigh the evidence and draw reasonable inferences from the testimony presented at trial. *Id.* Because sufficiency of the evidence is a mixed question of law and fact, the deference required by both § 2254(d)(1) and (d)(2) is applied. *Maynard v. Boone, supra,* 468 F.3d at 673. A federal habeas court must "defer to any determination of factual issues by the state court due to the presumption of correctness afforded by § 2254(e)." *Id.*[5]

### 1. *Evidence that Petitioner Fired the Bullets that Killed McQuin*

■■■ As the OCCA acknowledged, "[i]t is true that no one saw Appellant kill McQuin and that the murder weapon was never recovered." *See* OCCA Opinion at 13. Nonetheless, testimony was introduced that, masked with bandanas, Petitioner and Gatewood each pulled a gun on McQuin inside Stevenson's house. They asked McQuin for the keys to his car and when he responded the keys were outside, they forced McQuin outside of the house. Tr. Vol. II at 25–26. Once outside, McQuin yelled for Stevenson to bring him his keys and then several shots were fired. Tr. Vol. II at 26–30, 88–94. As the OCCA determined, this evidence was sufficient, under Oklahoma law, to establish that Petitioner aided and abetted in the commission of an attempted robbery and, therefore, that Petitioner was properly found guilty of First Degree Felony Murder. *See* OCCA Opinion at 13 ("Although there is no evidence that Appellant fired the fatal shots, there was sufficient evidence to prove that he aided and abetted in the commission of the attempted robbery and, therefore, under the provisions of 21 O.S. 2001, § 701.7(B), was properly found to be guilty of First Degree Felony Murder.") *(citing McDonald v. State,* 674 P.2d 1154, 1155–1156 (Okla.Crim.App.1984)).[6]

■■■ To the extent the OCCA's determination rests on the proper interpretation of state law governing felony murder, it is not the province of this Court on federal habeas review to reexamine state court determinations on matters of state law. *See Estelle v. McGuire,* 502 U.S. 62, 67–68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991).

---

5. The OCCA reviewed Petitioner's sufficiency of the evidence claim citing state law and applying the following standard: "[t]his Court reviews challenges to the sufficiency of the evidence in the light most favorable to the State and will not disturb the verdict if any rational trier of fact could have found the essential elements of the crime charged to exist beyond a reasonable doubt." OCCA Opinion at 12. As the Tenth Circuit has found, this standard comports with *Jackson. See Turrentine v. Mullin, supra,* 390 F.3d at 1203 ("Although the OCCA did not directly

cite *Jackson,* it applied an analogous state standard ...; [w]e therefore ask whether the OCCA's decision was contrary to or involved an unreasonable application of *Jackson,* or whether it was based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d)(1)-(2).").

6. The jury was instructed, in accordance with Oklahoma law, on aiding and abetting. *See* Response, Exhibits 7 and 8.

Moreover, the Tenth Circuit has upheld the OCCA's dual application of the aider and abettor and felony murder doctrines under Oklahoma law. *See Johnson v. Mullin,* 505 F.3d 1128, 1142–1143 (10th Cir.2007) (denying federal habeas challenge to the sufficiency of the evidence where petitioner argued he was not at the crime scene; evidence sufficiently established that petitioner, at a minimum, aided and abetted in bank robbery by purchasing weapons, scouting out bank day before robbery, participating in getaway plans and in spending proceeds of robbery and therefore that petitioner was guilty of felony murder), *cert. denied,* —— U.S. ——, 128 S.Ct. 2933, 171 L.Ed.2d 864 (2008). Accordingly, Petitioner has failed to meet his burden of proving that no rational trier of fact could have found that Petitioner aided and abetted in the commission of attempted robbery and his challenge to the sufficiency of the evidence must fail.

### 2. *Gatewood's Testimony Was Sufficiently Corroborated*

 Petitioner contends Gatewood's accomplice testimony was not sufficiently corroborated, making the evidence insufficient to support his conviction. Under Oklahoma law: "[a] conviction cannot be had upon the testimony of an accomplice unless he be corroborated by such other evidence as tends to connect the defendant with the commission of the offense, and the corroboration is not sufficient if it merely shows the commission of the offense or the circumstances thereof." Okla. Stat. tit. 22, § 742 (2001).

As previously set forth, Gatewood testified that he was charged with murder in

the first degree, though he pled guilty to accessory to murder. Tr. Vol. II at 161– 162. Therefore, Gatewood's testimony clearly qualifies as accomplice testimony. According to Gatewood, Davis told Stevenson to tell McQuin to move his car. Tr. Vol. II at 165–166. Gatewood walked out of the house and headed towards his own car. Tr. Vol. II at 166. He heard a discussion about keys amongst Petitioner, Davis and McQuin. Tr. Vol. II at 180. By the time Gatewood got to his own car, he heard about five gunshots fired. Tr. Vol. II at 167. He thought Petitioner fired the shots. *Id.* He had seen Petitioner with a gun in Stevenson's house that night. *Id.* He "supposed" the gun Petitioner had was a 357. Gatewood denied that he, himself, had a gun that night. *Id.*

Under Oklahoma law, Gatewood's testimony need not be corroborated in all material respects but requires " 'at least one material fact of independent evidence which tends to connect the defendant with the commission of the crime.' " *See* OCCA Opinion at 14 (*citing Cummings v. State,* 968 P.2d 821, 830 (Okla.Crim.App.1998)). Stevenson's testimony that Petitioner and Gatewood forced McQuin out of her house at gunpoint when he told them the keys to his car were outside and that McQuin then yelled for her to bring him his keys constitutes sufficient corroboration as it is independent evidence of at least one material fact connecting Petitioner to the commission of the crime. Petitioner, therefore, has failed to meet his burden of proving that no rational trier of fact could have found Petitioner guilty beyond a reasonable doubt.[7] The OCCA's determination

---

7. As the Tenth Circuit has noted in an unpublished opinion, on federal habeas review, the court "is not required, as was the OCCA, to inquire into whether there was sufficient evidence to support the verdict absent [the accomplice] testimony" as "[f]ederal law governing insufficiency claims requires a re-

viewing court to determine only whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Watson v. Howard,* 123 Fed. Appx. 910, 918 (10th Cir.2005) (unpublished op.) (internal quotations and citation omitted).

regarding the sufficiency of the evidence against Petitioner is not contrary to or an unreasonable application of Supreme Court precedent, nor is it an unreasonable determination of the facts in light of the evidence presented.

### 3. *The Evidence Was Sufficient to Find Petitioner Was Committing Attempted Robbery*

 Petitioner further claims the evidence was insufficient to establish that anyone was attempting to steal McQuin's keys when he was killed. Petitioner claims that other than Stevenson and Tubbs testifying that they heard McQuin say something about his keys before the shooting started, nothing in the record indicates "that anyone was trying to rob him of his keys when he was killed." *See* Brief in Support of Petition [Doc. #2] at 39.[8]

 Under Oklahoma law, conviction for the offense of attempted robbery requires proof of the following elements:

*First,* wrongfully;

*Second,* attempting to take;

*Third,* and carry away;

*Fourth,* personal property;

*Fifth,* of another;

*Sixth,* from the person of another;

*Seventh,* by force/fear;

*Eighth,* through use of a dangerous weapon.

*See* Oklahoma Uniform Jury Instructions, Criminal 2nd Edition, 4–145; *see also* Okla. Stat. tit. 21, §§ 791, 801.

Stevenson testified that Petitioner and Gatewood pulled bandanas over their faces as Davis and McQuin came from the back of the house towards the living room. Tr. Vol. II at 25. When McQuin entered the living room, Petitioner and Gatewood pulled guns on him. Stevenson testified Petitioner was pointing the gun directly at McQuin, in the area of his chest and upper body. Tr. Vol. II at 27. During this time Petitioner and Gatewood kept asking McQuin for the keys to his car. McQuin responded that the keys were outside. Tr. Vol. II at 26. Petitioner and Gatewood then pushed McQuin out the door while continuing to point their guns at him. Tr. Vol. II at 26–27. Once they were outside, Stevenson could still hear discussions about the keys. Stevenson heard McQuin say the keys were inside and that Stevenson had the keys. He then yelled to her: "Baby, give them the keys." Tr. Vol. II at 28. Stevenson then heard several shots fired. Tr. Vol. II at 29.

Ashley Tubbs also testified that she heard McQuin asking Stevenson to give them his keys. Tr. Vol. II at 88. Tubbs testified that his voice indicated that "he was crying or scared" and that "you can tell he had fear." *Id.*; *see also* Tr. Vol. II at 92–93. The tone of his voice scared her and made her cry even more. She then heard four gun shots. Tr. Vol. II at 94. This testimony is sufficient to establish that Petitioner was attempting to take McQuin's car keys by force or fear through the use of a dangerous weapon.

The OCCA made the following findings when it determined the evidence was sufficient to prove Petitioner was committing attempted robbery at the time McQuin was shot:

> Testimony at trial indicated that when Davis and McQuin went into the living room, Appellant and Gatewood pulled their guns on McQuin and demanded his car keys. When McQuin responded that his keys were outside the men forced him to go outside. Stevenson could hear the men outside and believed they were still talking about the car keys. She heard McQuin tell them that the keys were in the house and he yelled, "Baby, give them the keys." [footnote omitted].

---

8. Page references are made to the electronic pagination.

Soon thereafter, she heard the gunshots that killed McQuin. This was sufficient evidence from which the jury could have found beyond a reasonable doubt that Appellant was attempting to take the victim's car keys from him by force through use of a dangerous weapon.

*See* OCCA Opinion at 14–15. The OCCA's determination is based on a reasonable determination of the facts and application of the *Jackson* standard. Habeas relief should therefore be denied.

### F. *Ground Six—Sentencing Errors*

■■■ Petitioner brings three claims related to sentencing errors. First he claims the trial court improperly bifurcated Petitioner's trial, submitting the issue of guilt/innocence in the first stage and the issue of sentencing in the second stage. Second, he claims the trial court erred in not instructing the jury on Oklahoma's 85% Rule, *i.e.*, that Petitioner would serve 85% of a life sentence, or thirty-eight years, before becoming eligible for parole.[9] Finally, Petitioner claims the State improperly introduced evidence of a "transactional prior"—two counts from the same conviction—in violation of Okla. Stat. tit. 21, § 51.1(B).

The OCCA addressed these claims on direct appeal of Petitioner's conviction and determined both that the bifurcation was in error and the failure to instruct on the 85% Rule was in error. As to Petitioner's third claim, the OCCA found it unnecessary to address the merits of the claim because of its ruling that bifurcation was improper. Based on that ruling, evidence of Petitioner's prior convictions was inadmissible. *See* OCCA Opinion at 17–18. As a result of these errors, the OCCA then modified Petitioner's sentence to life imprisonment with the possibility of parole. *See id.* at 18.

As Respondent correctly maintains, because the OCCA granted relief and modified Petitioner's sentence, he is not entitled to federal habeas relief. The OCCA's modification was both authorized under Oklahoma law and in accord with due process. *See* Okla. Stat. tit. 22, § 1066 (2006) ("The appellate court may reverse, affirm or modify the judgment or sentence appealed from, and may, if necessary or proper, order a new trial or resentencing."); *Carbray v. Champion,* 905 F.2d 314, 318 (10th Cir.1990) ("[I]f a state appellate court has authority to exercise its own discretion and to modify a jury sentence on appeal as a matter of state law, no due process violation occurs.") (*citing Clemons v. Mississippi,* 494 U.S. 738, 746, 110 S.Ct. 1441, 108 L.Ed.2d 725 (1990)). Ground Six of the Petition, therefore, should be denied.

### G. *Ground Seven—Ineffective Assistance of Trial Counsel*

In his seventh ground for relief, Petitioner claims he was denied the effective assistance of trial counsel. In order to establish a claim of ineffective assistance of counsel, Petitioner must show counsel's performance was deficient and it prejudiced his defense. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Deficient assistance of counsel is representation that "[falls] below an objective standard of reasonableness." *Id.* at 688, 104 S.Ct. 2052. "This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687, 104 S.Ct. 2052. Prejudice to the defense "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687, 104 S.Ct. 2052. "The defendant

---

9. *See* Okla. Stat. tit. 21, § 13.1; *Anderson v. State,* 130 P.3d 273 (Okla.Crim.App.2006).

must show that there is a reasonable probability that, but *for* counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694, 104 S.Ct. 2052.

### 1. *Failing to Elicit Testimony that the Victim's Keys Were in His Pocket*

■ A police report established that a set of car keys to McQuin's vehicle was found in his pants pocket upon a police inventory of McQuin's clothing during the investigation of the crime scene. *See* Response, Exhibit 2, Notice of Extra–Record Evidence, Appendix B. Petitioner claims trial counsel was ineffective for failing to elicit testimony from an available State witness, Detective Gary Damron, about finding the car keys on McQuin's person. According to Petitioner, this evidence wholly undermines the State's theory of the case that Petitioner was attempting to rob McQuin of his car keys. Petitioner claims the evidence impeaches the testimony of both Stevenson and Tubbs that McQuin had yelled to Stevenson to give him the keys.

The OCCA rejected this claim, applying *Strickland. See* OCCA Opinion at 18–19. The OCCA stated:

> This evidence does not, as Appellant asserts, impeach the testimony of Stevenson and Tubbs that the victim yelled into the house for Stevenson to bring him the keys. McQuin may have forgotten that he had the keys in his pocket or may have chosen for some unknown reason not to give them to his attackers to his ultimate detriment. We do not find that there is a reasonable probability that but for counsel's alleged unprofessional error in not eliciting this evidence of dubious significance, the result of the proceeding would have been different.

*See* OCCA Opinion at 19. Petitioner has failed to demonstrate that the failure to introduce evidence that the keys were in McQuin's pocket sufficiently undermines confidence in the outcome of the trial as necessary to demonstrate *Strickland* prejudice. The OCCA's determination of this issue is reasonable and entitled to AEDPA deference.

### 2. *Failing to Request Reconsideration of the State's Motion in Limine*

■ Petitioner further claims trial counsel was ineffective for failing to request a reconsideration of its ruling on the State's Motion in Limine regarding the drugs and money found in McQuin's pocket. Petitioner claims trial counsel should have done so during the direct examination of the State's witness Ashley Tubbs. As mentioned earlier in regard to Petitioner's first claim for relief, Tubbs testified that when Davis and McQuin were walking from the back bedroom towards the living room, she heard McQuin ask Davis if he had any "greens." Tr. Vol. II at 85–86. Ms. Tubbs further testified that Davis made no response to McQuin's question. Tr. Vol. II at 86. According to Petitioner, "greens" was a reference to drugs (presumably, marijuana) and Tubbs' testimony opened the door to further inquiry about drugs.

When asked what "greens" were, however, Ashley Tubbs testified she did not know. Tr. Vol. II at 86. No other witness testified that "greens" meant marijuana nor is there any evidence in the record to support making such a correlation. As the OCCA found, "Appellant's assertion that this was a reference to drugs is unsubstantiated by the record and counsel cannot be found ineffective for failing to re-urge the Motion in Limine." *See* OCCA Opinion at 19. As Ashley Tubbs' testimony provided an insufficient basis upon which to request reconsideration of the court's ruling on the

State's motion in limine, Petitioner has failed to demonstrate that his trial counsel was ineffective for failing to do so. The OCCA's determination of this issue is not contrary to or an unreasonable application of *Strickland.*

### 3. *Failing to Adequately Raise Errors Related to the Sentencing Phase*

As his final claim of ineffective assistance of trial counsel, Petitioner claims his trial counsel belatedly objected to the bifurcation of his trial and failed to lodge any objection to the State's introduction of evidence of the transactional prior conviction. As discussed in relation to Ground Six, the OCCA determined that the bifurcation of his trial was erroneous and that the evidence of all prior convictions was inadmissible and, therefore, modified Petitioner's sentence. Petitioner has been granted the relief to which he is entitled as a result of any prejudice arising out of counsel's performance. Accordingly, like the OCCA, this Court finds this claim of ineffective assistance of trial counsel need not be addressed. *See* OCCA Opinion at 19–20.

In sum, Petitioner has failed to demonstrate that he is entitled to federal habeas relief on his ineffective assistance of trial counsel claims. The OCCA's adjudication of these claims rests on a reasonable determination of the facts and is not contrary to or an unreasonable application of *Strickland.*

### H. *Ground Eight—Cumulative Error*

In his eighth and final ground for relief, Petitioner alleges that cumulative error deprived him of a fundamentally fair trial. On direct appeal, the OCCA denied Petitioner's claim of cumulative error: "Upon review of Appellant's claims for relief and the record in this case we conclude that although his trial was not error free, any errors and irregularities, even when considered in the aggregate, do not require

reversal because they did not render his trial fundamentally unfair or taint the jury's verdict." *See* OCCA Opinion at 20. Of course, the OCCA did find sentencing error and, as set forth above, modified Petitioner's sentence. *Id.*

 "Cumulative error analysis is an extension of harmless error and conducts the same inquiry as for individual error focusing on the underlying fairness of the trial." *Darks v. Mullin,* 327 F.3d 1001, 1018 (10th Cir.2003) (citations and internal quotations omitted). The cumulative effect of two or more individually harmless errors has the potential to prejudice a defendant to the same extent as a single reversible error. *Duckett v. Mullin,* 306 F.3d 982, 992 (10th Cir.2002).

Petitioner does not cite any particular errors to support his cumulative error claim but rather, in a general way, asks the Court to consider collectively the trial errors to determine their cumulative effect on his conviction and sentence. Having reviewed Petitioner's claims, this Court finds the OCCA's determination of Petitioner's cumulative error claim is reasonable and entitled to AEDPA deference. Ground Eight of the Petition, therefore, should be denied.

### VI. *Pending Motion*

Simultaneously with the filing of the Petition, Petitioner filed a motion requesting the court to enlarge the record to include the state court record as a whole, and further requesting an evidentiary hearing. Thereafter, in responding to the Petition, Respondent submitted the following relevant state court records:

Transcript of Preliminary Hearing on April 23 & May 19, 2004;

Transcript of Motion Hearing on December 9, 2005;

Transcript of Jury Trial (Volumes I, I–A, II and III) on December 12, 13 and 14, 2005; Transcript of Sentencing on January 20, 2006; and

Videotape of Interview with Gregory Thompson.

*See* Record [Doc. # 14]. The Court finds it has the relevant state court records necessary for review of Petitioner's habeas claims. Without a specific identification of omitted records or an explanation for further supplementation of the record, Petitioner's request, therefore, should be denied.

Petitioner's cursory and conclusory request for an evidentiary hearing should also be denied. Petitioner fails to articulate any basis for such an evidentiary hearing other than a "fair opportunity to develop the record" nor does Petitioner identify any particular claim for which he contends an evidentiary hearing is required. In this regard, the Court notes that Petitioner requested an evidentiary hearing before the OCCA on his ineffective assistance of trial counsel claim. That request was denied after the OCCA considered Petitioner's motion to supplement the record and attached documents. *See* Response, Exhibit 5, OCCA Opinion at 18, footnote 9.[10] To the extent Petitioner seeks an evidentiary hearing on this same claim, Petitioner has failed to demonstrate that his allegations, if true and not contravened by the existing factual record, would entitle him to federal habeas relief. *Anderson v. Attorney General of Kansas*, 425 F.3d 853, 858–859 (10th Cir.2005). Moreover, "[t]he purpose of an evidentiary hearing is to resolve conflicting evidence," and here Petitioner points to no conflicting evidence related to his ineffective assistance of counsel claims. Rather, considering as true and uncontroverted the evidence in support of Petitioner's claims, he has failed to demonstrate that the evidence entitles him to federal habeas relief. For these reasons, Petitioner's conclusory request for an evidentiary hearing should be denied.

### RECOMMENDATION

It is recommended that the Petition for Writ of Habeas Corpus [Doc. # 1] be denied. It is further recommended that Petitioner's Motion for Order Directing Respondent to Enlarge Record [Doc. # 4] be denied.

### NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to object to this Report and Recommendation. *See* 28 U.S.C. § 636. Any objections must be filed with the Clerk of the District Court by December 16th, 2008. *See* Local Civil Rule 72.1. Failure to make timely objection to this Report and Recommendation waives the right to appellate review of the factual and legal issues addressed herein. *Moore v. United States*, 950 F.2d 656 (10th Cir.1991).

### STATUS OF REFERRAL

This Report and Recommendation disposes of all matters referred by the District Judge in this case and terminates the referral.

DATED this 26th day of November, 2008.

---

10. The motion to supplement the record that Petitioner filed with the OCCA related to the police report that documented the fact that the keys to McQuin's car were discovered in his pants pocket when police investigated the crime scene. *See* Response, Exhibit 2. As discussed in relation to Ground Seven of the Petition, this evidence, even if true and uncontroverted, does not entitle Petitioner to federal habeas relief.